UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ZOHAIR ALNABULSI | : | CIVIL ACTION NO. |
| | : | 3:10-CV-01591(JCH) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FIRST UNUM LIFE INSURANCE | : | |
| COMPANY and the DAVID LERNER | : | |
| ASSOCIATES, INC., GROUP LONG | : | |
| TERM DISABILITY PLAN | : | |
| | : | |
| Defendants. | : | June 28, 2011 |

### DEFENDANTS' REPLY MEMORANDUM

In their opening brief, defendants agreed with plaintiff that he did and continues to suffer restrictions and limitations on account of his back condition. Where defendants and the plaintiff part company is on whether those restrictions and limitations prevent him from performing the "material and substantial duties" of his occupation as an investment counselor. As he did below during the administrative process, plaintiff again offers up the job description of his former position with David Lerner Associates, Inc. as the definition of "Investment Counselor" which he asks the Court to adopt in assessing whether Unum's decision was arbitrary and capricious.[1] However, both the Policy and the law call for the Court to apply a different definition. Unum reviewed plaintiff's claim

---

[1] The plaintiff does not claim that *de novo* review should apply in lieu of the Policy language or that the Court should not apply deferential review to Unum's decision. Therefore, the Court should apply deferential review to Unum's administrative decision. See, Defendants' Brief at 28-30. See also, Defendants' Local Rule 56(a)(2) Statement at ¶19.

1

in light of how the occupational duties of an Investment Counselor are performed in the national economy.  That is the applicable definition.  Based upon that review, Unum reached a decision with which plaintiff not surprisingly disagrees.  That disagreement, however, does not warrant reversal of Unum's decision.

### 1. Unum Did Not Act Arbitrarily or Capriciously in Coming to its Understanding of the "Material and Substantial" Duties of Plaintiff's "Regular Occupation"

The Policy states that in order to receive coverage, a claimant must prove that he is "**LIMITED**" from performing the "**MATERIAL AND SUBSTANTIAL DUTIES**" of his "**REGULAR OCCUPATION**."  AR 114.  It goes on to define "**REGULAR OCCUPATION**" as

> The occupation you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specified employer or at a specific location.

AR 116.  Therefore, the applicable definition of REGULAR OCCUPATION which the Court must apply here is one of a "position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999).  The inquiry is not restricted to the participant's particular job, Peck v. Aetna Life Insurance Company, 2007 U.S. Dist. LEXIS 40031 *8 (D. Conn. 2007).  When a policy does not strictly define the duties of a position, an administrator is permitted, if not actually encouraged, to refer to the Department of Labor's Dictionary of Occupational

2

Titles to assess a claimant's material job functions. <u>Klecher v. Metropolitan Life Ins. Co.</u>, 167 Fed. Appx. 287, 290 n. 3, 2006 U.S. App. LEXIS 3978 *4 (2d Cir. 2006).

Because of the language of the Policy specifically indicates by its express terms that Unum's review of the claimant's "regular occupation" is not guided solely by "how the work tasks are performed for a specified employer or at a specified location," claimants are put on notice that Unum will review "material and substantial" duties using reference to a broader definition than the one applicable to the particular claimant's position.  Id.  Indeed, in the Policy Unum specifically informs claimants that its decision as an administrator is **not** controlled by a claimant's actual job functions for a particular employer at a particular location.  AR 116.

In this case, Unum had significant information before it on which to assess and understand the "Material and Substantial" duties of plaintiff's "Regular Occupation." It had plaintiff's job description from David Lerner Associates, Inc.  AR 43.  It had the notes of a telephone interview between plaintiff and Unum on December 1, 2008, AR 126-7, and the results of an in-person interview between a Unum field representative and plaintiff at plaintiff's home on May 28, 2009.  AR 389-92.  It had plaintiff's and a colleague's affidavits submitted on administrative appeal, AR 623-633, as well as one vocational analysis by Norma Parras-Potenzo of July 1, 2009, AR 419-20, a second by Marie Sullivan on August 24, 2009, AR 543, and a third, conducted by Richard Byard during Unum's administrative review.  AR 733-34.  Through plaintiff's affidavit, it was clear he claimed that he could not walk or stand sufficiently to cultivate a client base, AR

629, that because of that fact, David Lerner terminated his employment, and he could not now perform the type of face-to-face marketing necessary to earn the same income as he had in the past. AR 625-6, ¶¶8, 10. The affidavit of his colleague whom plaintiff offered in support of his claim was less supportive of plaintiff's position that he could not perform the material duties of his regular occupation. Mr. Fishkind linked the physical activities associated with prospecting clients more to building a clientele than to maintaining one.[2] Unum was entitled to observe that and draw the conclusion that plaintiff's decrease in income was affected significantly by the fact that he was starting fresh in his business, not re-integrating himself into his established network.

In any case, Unum diligently analyzed the duties of plaintiff's occupation and came to a reasoned conclusion. During its initial analysis of the claim, Unum's vocational analyst wrote that the material and substantial duties of plaintiffs' position for David Lerner were:

> Developing a customer base comprised of individuals or corporate clients, and make securities recommendations based upon their needs, suitability. Essential Job duties involve developing client base, evaluate client financial goals and investment tolerance; analyze client's financial profile, advise on what company (DLA) financial products may met their financial objectives; report to assigned branch each weekday (unless on an appointment) provide ongoing service to all clients. Requirements include obtain and maintain securities licenses (Series 7 & 63) insurance licenses (Life, Accident and Health).

AR 419. Further, Ms. Parras Potenzo informed Unum that in the national economy, the

---

[2] "No financial advisor/investment counselor will be successful without going out into the field in order to prospect for new clients. This is particularly true of a financial advisor who does not already have an established client list." AR 632.

4

position of an "Investment Counselor" was defined as:

> Develops and implements financial plans for individuals, businesses, and organizations, utilizing knowledge of tax and investment strategies, securities, insurance, pension plans, and real estate: Interview client to determine client's assets, liabilities, cash flow, insurance coverage, tax status, and financial objectives.  Analyzes client's financial status, develops financial plan based on analysis of data, and discusses financial options with client.  Prepares and submits documents to implement plan selected by client.  Maintains contact with client to revise plan based on modified needs of client or changes in investment market.  May refer client to other establishments to obtain services outlined In financial plan may sell insurance to client, recommending amount and type of coverage [SALES AGENT, INSURANCE (insurance) 250.257-010].  May buy and sell stocks and bonds for client [REGISTERED REPRESENTATIVE (financial) 250.257-018].  May rent, buy, and sell property for client [SALES AGENT, REAL ESTATE (real estate) 250.357-018].  May be registered with professional self-regulatory association and be designated Certified Financial Planner (profess. & kin.).

Ms. Parras-Potenzo informed Unum that plaintiff's position was done "primarily from a seated position throughout the day, but does allow for change of position as needed," and stated that the "exertional demands of plaintiff's position" were

> Lifting, Carrying, Pushing, Pulling up to 10 Lbs. occasionally. Mostly sitting, may involve occasional periods of standing or walking, constant talking, hearing frequent near acuity keyboarding occasional reaching, handling.

Id.  After reviewing the information then in Unum's possession and particularly in light of plaintiff's statements that he did "a lot of canvassing" and "standing at some seminars" in his job, vocational expert Marie Sullivan concluded that

> [t]he extent of reported canvassing would be specific to the job as many employers have different methods of providing leads/accounts.  The reported standing at seminars would fall within the "occasional standing" that was noted in FCE and occ clarification.  In reviewing occupational comment, occ clarification and FCE, claimant's occupation is performed with frequent sitting and occasional standing/walking.

AR 543.

On appeal, Richard Byard, a senior vocational rehabilitation consultant, reviewed even more materials relating to plaintiff's physical capacities than were available to Parras-Potenzo and Sullivan and wrote:

> The claimant was employed as an Investment Counselor for the policyholder. Based on the available information, the prior vocational comment has classified the claimant's occupational duties as being most consistent with those performed as a Financial Planner. (See generally DOT profile # 250.257-010.) The material and substantial duties of this occupation and their associated physical demands have been outlined in the prior vocational review. As generally performed, the claimant's occupation calls for a "Sedentary" level of physical exertion, as that term is defined by the Dictionary of Occupational Titles. This work typically requires frequent sitting, occasional periods of standing/walking, and the occasional lifting/exertion of force of up to 10 lbs. While duly noting that this occupation typically requires significant out-of-the-office time spent prospecting and cultivating new clients and/or servicing existing clients, this level of activity does not expand the overall level of exertion of this occupation beyond the "Sedentary" level described above. The mere participation in driving activities, standing for 90-120 minutes at one time for presentations, meeting with clients at trade shows, or performing "cold call" activities would not require the claimant to perform work in excess of his established "Sedentary" level of work capacity.

AR 734.

During the initial claims analysis, AR 535-39, and later on administrative review, AR 843, Unum weighed and assessed the competing information it had regarding plaintiff's regular occupation and its material and substantial duties. This type of analysis and process is exactly what courts require of administrators. See, Kocsis v. Standard Insurance Company, 142 F. Supp. 2d 241 (D. Conn. 2001). Unum did not act arbitrarily or capriciously in coming to its understanding of the plaintiff's "regular occupation" or the "material and substantial duties" of that "regular occupation." It

6

ignored no piece of information plaintiff provided in support of his claim.  Indeed, Unum accepted much of the "material and substantial duties" which plaintiff himself offered.  It was not required by the law or the Policy, however, to do what plaintiff wanted, i.e. to accept his definition wholesale.

### 2. Unum Did Not Act Arbitrarily or Capriciously in Determining That Plaintiff Had the Physical Capacity to Perform the Material and Substantial Duties of His Regular Occupation

Having defined plaintiff's "regular occupation" and its "material and substantial duties," Unum then went on to determine whether plaintiff's demonstrated physical capacities met those criteria.  As before, Unum had substantial information available to it.  Plaintiff himself told Unum on December 1, 2008 Unum that he could "walk, sit...for brief periods...cannot be in one position for long period of time [and] can lift at least 10 pounds."  AR 126.  From the in person interview conducted by Unum's field representative on May 28, 2008, Unum learned that plaintiff actually sat in a chair for between 30 to 45 minutes, and with one brief break during the interview, sat for one hour.  AR. 391.  On August 18, 2009, plaintiff underwent the functional capacity evaluation which his pain management specialist suggested would be exemplary of his physical capacity at the time.  AR 455-57.  Among other things, Unum learned that:

> Mr. Alnabulsi voluntarily sat for 52:24 minutes of a 60 minute period when he was offered a choice between sitting and standing at his discretion.  Maximum uninterrupted sitting was 13:52.  Sitting periods increased throughout the hour.

Additionally, he sat in his vehicle for a reported 35 minutes[3] without stopping while driving to the appointment as well as five minutes in the waiting room and more than 27 of 30 minutes while being interviewed.[4]

Unum also learned from that same expert that plaintiff had the capacity to perform a "sedentary occupation" on a full time basis.[5] Finally, Unum asked and received the opinion of plaintiff's capacity from a physician who is board certified in physical medicine and rehabilitation. Unum's conclusion that plaintiff's observed abilities met the "Material and Substantial" duties of his regular occupation was not wrong, let alone arbitrary or capricious. He clearly demonstrated the capacity to sit for an extended period of time, drive without interruption for an extended period of time, perform both functions for even further periods if provided with breaks, walk, stand, speak, communicate clearly, and by his own admission carry or transport weights up to 10 pounds "occasionally." AR 126. Insofar as "canvassing" and "standing at seminars"

---

[3] Plaintiff actually sat continuously in his car for at least 45 minutes going to and from the FCE. AR 500. These observations appear to contradict plaintiff's claim that he could not be "out in the field" engaging in "person-to-person" prospecting. AR 625, ¶¶5, 6, 8

[4] The independent analyst also told Unum that plaintiff demonstrated some "inconsistencies during testing...including inconsistent response to strength testing of the right lower extremity," the body part which plaintiff claimed limited his ability to work.

[5] According to the Department of Labor, a "Sedentary" occupation involves "exerting up to 10 lbs. of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a neglible amount of force frequently (Frequency: activity or condition exists from 1/3 to 2/ 3 of the time to lift, carry, push, pull or otherwise moves objects, including human body. AR 519.

was concerned, a separate analyst concluded that "the extent of reported canvassing would be specific to the job as many employers have different methods of providing leads/accounts...[and] "standing at seminars would fall within the 'occasional standing' that was noted in the FCE and occ classification." AR 526.  Indeed, plaintiff confirms that his former position at David Lerner required that specific type of "face to face prospecting for clients" when he writes that "plaintiff's job requires active participation in seminars, Trade Shows, canvassing and lengthy face to face meetings."  Plaintiff's Brief in Opposition at 4.

As with its evaluation of plaintiff's "regular occupation, " Unum here ignored no piece of information plaintiff provided in support of his claim.  It weighed competing information, accepted complementary information, and assessed each category in light of the material duties of plaintiff's regular occupation.  As before, this type of analysis and process is exactly what courts require of administrators.  <u>Kocsis</u>, <u>supra</u>.

### 3. Plaintiff Did Not Establish That He Suffered from Any Cognitive Deficits

Plaintiff continues to claim that his medication and unrelenting pain in his back, right leg and foot makes him "foggy," prevents him from concentrating, and therefore prevents him from working full time. PB 7-8.  Unum reviewed this claim at length during plaintiff's administrative appeal, and a board certified physiatrist found no objective evidence to support either that plaintiff demonstrated side effects from his then current medications or that he demonstrated any cognitive deficits.  AR 823-25; 842.

Unfortunately, he still provides no objective evidence to support these claims through the objective medical information in his file.  The only support he provides for this claim is his own affidavit.  The specialists at the Cleveland Clinic did not document any cognitive deficiencies, and his pain management physician did not observe any.  AR 832.  Even though Unum credited plaintiff's complaints of pain and limitation, it was not required to accept plaintiff's own assessment of his abilities, whether it came from plaintiff or through his doctors' repetition of them as plaintiff's subjective experiences of his own restrictions and limitations.

    **4.**    **Whether Unum's Assessment of Plaintiff's Diagnosis Was Not Relevant to its Decision**

Plaintiff claims that Unum erred in questioning whether his objective medical symptoms met the diagnosis of Regional Pain Syndrome.  Plaintiff's Brief 10-13.  As defendants indicated in their opening brief, Unum addressed the issue of plaintiff's diagnosis simply because his attorney on administrative appeal raised that claim, AR 843, not because its decision was guided on whether or not plaintiff demonstrated each and every criteria for a diagnosis of that condition.  Defendants' Brief at 35-36.  Unum recognized that the only relevant question before it was whether plaintiff was "limited from performing the material and substantial duties" of his "regular occupation due to [his] sickness or injury."  See, e.g. Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500 (S.D.N.Y. 2002); Couture v. UNUM Provident Corp., 315 F. Supp. 2d 418 (S.D.N.Y. 2004).  As defendants illustrated, that was the standard Unum applied to this claim.

## CONCLUSION

For all the foregoing reasons, Unum's administrative determination should be confirmed; the Court should grant Unum judgment on the administrative record and the complaint should be dismissed.

RESPECTFULLY SUBMITTED,

BY: _____
Alexander H. Schwartz, Esq. ct 05773
3695 Post Road
P.O. Box 701
Southport, CT   06480-0701
203.255.9829
203.255.9839 (fax)
alex@ahschwartz.com

## CERTIFICATION

I hereby certify that on June 28, 2011 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____
Alexander H. Schwartz